UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) 2:16-cr-00182-LSC-JEO-2 |
| PHILIP HENRY COOPER, | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION AND ORDER**

**I. Introduction**

The defendant, Philip Henry Cooper ("Cooper"), has filed a response and objection to Writs of Execution filed by the Government, a motion to amend his judgment to provide that restitution is to be paid in installments, and a request for a hearing. (Doc. 112.) The Government has responded in opposition. (Doc. 117.) Cooper has replied in support. (Doc. 118.) For the following reasons, Cooper's requests are due to be denied.

**II. Background**

The grand jury indicted Cooper and others in June 2016 for bank bribery, wire fraud, money laundering, and conspiracy to defraud Regions Bank

1

("Regions") of over $5.1 million. (Doc. 1.) It returned a Superseding Indictment containing the same kinds of charges in September 2016. (Doc. 36.)

In May 2017, Cooper pleaded guilty to conspiracy. In his Plea Agreement, Cooper admitted to perpetrating the scheme and personally receiving over $1 million from it, and agreed to pay $5.1 million in restitution back to Regions, jointly and severally with his co-conspirators. (Doc. 69.) He agreed to forfeit $551,649 formerly stored in his attorney's trust account and a safe in his house. He also agreed not to contest, by appeal or post-conviction motion, any restitution order entered against him. (*Id.* at 12-13.) The Government agreed to recommend a 60-month prison sentence. It also agreed not to take Cooper's residence for restitution or forfeiture, and to recommend to the Attorney General that the $551,649 be applied towards his restitution obligation—in other words, that the forfeited funds be "restored" to Regions. At his May 2017 plea hearing, Cooper agreed that he had read his Plea Agreement and discussed it with his lawyer, initialed all its pages, and signed it in various places. (Doc. 116.) He also agreed that he had knowingly and voluntarily signed the portion waiving his right to appeal or file a post-conviction petition except in limited circumstances. (*Id.* at 19.)

Cooper later revealed, in an objection to the original Presentence Investigation Report ("PSR"), that he had approximately $59,000 worth of equity

in the residence that the Government had agreed not to forfeit or liquidate for restitution. Cooper's Revised PSR contains additional facts concerning his and his wife's finances: Cooper is married to P.S., who is employed with a company that, prior to sentencing, was planning to transfer her to Florida; Cooper and P.S. sold the residence that the Government agreed not to forfeit, and P.S. purchased a house in Florida in August 2017 for $302,000, with $70,000 of that coming out of the couple's checking account; as of September 2017, Cooper received $1,643.67 per month from the Regions Financial Corporation Retirement Plan; as of September 2017, Cooper had $531,660.90 in a Regions 401(k) account and $206,784.27 in a Fidelity account; as of September 2017, P.S.'s monthly income was $5,659.80, making her and Cooper's combined income $7,303.47—more than $2,600 over their total monthly expenses.

At sentencing, the Government recommended that Cooper receive 48 months in prison—a year lower than the 60 months it agreed to in the Plea Agreement, and over three years lower than the low end of his Guidelines range. The Court agreed, and also noted that it would not impose a fine against Cooper "because the restitution . . . is going to take care of the majority of the assets that a fine could be recovered from." (Doc. 111 at 7.) The Court also orally ordered

Cooper to pay $5.1 million in restitution jointly and severally with two co-defendants. The following exchange then occurred:

> The Court: As to your restitution, he has paid a significant portion of that; is that correct?
>
> Defense Counsel: Yes, sir. He's paid slightly over half. We would ask, if the court is so inclined, to order that it be payable henceforth by installment plan given the amount.
>
> The Court: Right. Well, this is what I normally say in this and that is that the restitution will be with interest. And it's all due immediately. But until he gets out of prison, there is not going to be an effective way of really breaking up and figuring out how much he can pay per month kind of thing.
>
> Defense Counsel: Yes, sir.
>
> The Court: So when he gets out, I'm going to direct the probation office to get with him and calculate what would be an effective amount based on what's left to be paid at that time.

(Doc. 111 at 8-9.) Cooper did not object to the restitution order or anything else the Court said at sentencing.

The Court entered an Amended Judgment in October 2017, ordering Cooper to "immediately" pay Regions $5.1 million in restitution, jointly and severally with two co-defendants. (Doc. 98.) Until now, Cooper has not attacked the Amended Judgment in any way.

4

In January 2018, taking note of Cooper's disclosure of $531,660.90 in his Regions 401(k) and $206,784.27 in the Fidelity account, the Government obtained Writs of Execution for any accounts Cooper had at Merrill Lynch (a division of Bank of America believed by the Government, at the time, to be Regions's 401(k) plan servicer) and Fidelity. The Merrill Lynch records showed $242,500 transferred from there to a Synovus account in July 2016, the month after Cooper was indicted. The Government states that it is tracking this money, but because Cooper does not appear to have any assets at Merrill Lynch, it thus currently doesn't seek to levy anything there. Cooper recalls having two accounts with Merrill Lynch belonging to his son and daughter, but the Government notes that it not interested in levying any accounts in the names of Cooper's children, so long as those accounts have no involvement with Cooper's crimes or their proceeds. The Fidelity records showed an individual retirement account as being registered to Cooper and then valued at $234,848.61. Cooper agrees that the account is his and states that the account's purpose was to support him and his wife during retirement, and that his wife has relied on at least a portion of those funds in anticipation of retirement. The Government seeks to levy it and direct its contents to Regions.

Cooper now asks this Court to limit the amounts withdrawn from his accounts (primarily the Fidelity account) based on his wife's reliance on the funds for her future needs. He also requests that the Court amend the restitution portion of his Amended Judgment to establish a payment plan because, according to Cooper, the Court erred when it orally ordered immediate payment of restitution but then also improperly delegated authority to the Probation Office to set a payment plan.

## III. Discussion

### A. Cooper's motion to amend the Amended Judgment to allow for payment of restitution in installments

Cooper's motion is due to be denied for both procedural and substantive reasons. First, he knowingly and voluntarily waived his right to challenge his restitution obligation by post-conviction motion in his plea agreement. *See United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993) ("We agree with the basic reasoning of our sister circuits that sentence appeal waivers may be enforced.").

Second, the motion is untimely. Rule 35 of the Federal Rules of Criminal Procedure allows a court to "correct a sentence that resulted from arithmetical, technical, or other clear error," but it has a jurisdictional, 14-day deadline. *See also United States v. Diaz-Clark*, 292 F.3d 1310, 1317 (11th Cir. 2002) (noting that Rule 35's deadline is jurisdictional and that any modification that a district court makes

to a sentence outside of it is a "legal nullity"). Cooper's motion comes months after his October 2017 Amended Judgment.

Nor can Cooper utilize Federal Rule of Criminal Procedure 36, which allows courts to correct minor clerical errors in judgments at any time, because Cooper seeks to change his obligation to immediately pay lump-sum restitution to a payment schedule, which is a fundamental change. *See United States v. Portillo*, 363 F.3d 1161, 1165 (11th Cir. 2004) (noting that clerical errors are "minor and mechanical in nature," and that a Rule 36 order cannot "fundamentally alter" a sentence). Cooper argues that his requested change is minor because, rather than seeking to alter the amount of restitution owed, he merely seeks to change the means by which he pays it. Regardless, even assuming Cooper's request is not barred by the appeal waiver in his plea agreement and that Cooper could utilize Rule 36 as the procedural mechanism by which to request this change, the Court declines to amend the judgment because Cooper is wrong on the merits as well.

This Court's restitution order was not improper. The Mandatory Victims Restitution Act ("MVRA") provides, "A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). District courts "shall, pursuant to

section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." *Id.* § 3664(f)(2). Section 3572, in turn, provides that if the district court orders immediate payment, no payment schedule is required, and payment is instead due immediately. *Id.* § 3572(d)(1). On the other hand, "[i]f the [restitution] order[ ] permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court . . . ." *Id.* § 3572(d)(2).

The Eleventh Circuit interpreted these provisions in *United States v. Prouty*, 303 F.3d 1249 (11th Cir. 2002). There, the defendant objected to having to fully and immediately pay over $5 million in restitution due to his financial status and asked instead for a payment schedule, to which the district judge stated, "I will leave that to the discretion of the Probation Office or whoever does that." *Id.* at 1251. The defendant argued on appeal that the district court had improperly delegated to the Probation Office authority to set a restitution payment schedule. *Id.* at 1253. The Eleventh Circuit agreed, finding that the district court's failure to personally set the payment schedule and instead delegate that authority to the Probation Office violated the MVRA. *Id.* at 1254-55.

At sentencing here, this Court ordered restitution due immediately despite Cooper's request for a payment schedule. It then added that, "when [Cooper] gets

out, I'm going to direct the probation office to get with him and calculate what would be an effective amount based on what's left to be paid at that time." (Doc. 111 at 8-9.) Cooper cites *Prouty* for his contention that this Court equivocally both ordered immediate payment and improperly delegated authority to the Probation Office to set a payment schedule, and since the Court's comments at sentencing indicate that the Court really "meant" to impose a payment schedule in the Amended Judgment, the Amended Judgment should be corrected to reflect that restitution should be paid in installments.

However, unlike in *Prouty*, this Court clearly ordered restitution to be due immediately, and then merely acknowledged that Cooper's probation officer would aid in *calculating* the appropriate amount that Cooper would be able to pay of the remaining amount owed after he is released from prison. Subsequent cases distinguishing *Prouty* have recognized that "a probation officer—who, unlike a district judge, monitors very closely a defendant serving a term of supervised release—is uniquely positioned to assess a defendant's financial condition at the future date of release from prison (i.e., to gather the appropriate information, to form a considered judgment, and to report to the court the defendant's ability to comply . . . at which time the court an adjust the monthly payments pursuant to 18 U.S.C. § 3664(k))." *United States v. Dezern*, 242 F. App'x 622, 627 (11th Cir.

9

2007) (unpublished) (finding found no error under *Prouty* where the defense objected to a post-release monthly restitution amount and the district court, recognizing that the objection was speculative because the defendant had not yet served his prison sentence, said: "Well, I'll leave that [Dezern's ability to pay] to the discretion of the probation officer at that time [upon the vesting of the monthly obligation]."); *see also Williams v. Pearson*, 197 F. App'x 872, 878 (11th Cir. 2006) (unpublished) ("In *Prouty*, the intent of the district court was somewhat unclear, and it immediately delegated the repayment schedule to the probation office. . . . Here, the court clearly ordered the restitution to be due in full immediately, and, therefore, under the MVRA, was not required to schedule the payments.") (internal citation omitted).

Accordingly, this Court did not waver from its oral order that restitution was due in full immediately by merely acknowledging the common-sense fact that Cooper's probation officer would aid in determining his financial situation upon his release from prison. The Court's order that restitution was due immediately was reiterated in the Amended Judgment. Cooper agreed in his Plea Agreement not to object to this Court's restitution order in exchange for a lower sentence, and he did not in fact object until now, as he is faced with garnishment of funds in a retirement

account used by his wife. Cooper's motion to amend the judgment is due to be denied.

### B. Cooper's objection to the Government's writs of execution

Nor can Cooper successfully challenge the Government's writs of execution for various reasons. Under the MVRA, the Department of Justice may enforce restitution orders through the Federal Debt Collection Procedures Act ("FDCPA"). 18 U.S.C. § 3613(a); 18 U.S.C. § 3664(m)(1)(A)(i)-(ii). A writ of execution employed per 28 U.S.C. § 3203(c) is one collection procedure available under the FDCPA. *United States v. Duran*, 701 F.3d 912, 915 (11th Cir. 2012) ("The [FDCPA] provides the United States several remedies to satisfy a judgment, one of which is to obtain a writ of execution." (citing 28 U.S.C. §§ 3202(a), 3203)). The Government may obtain a writ through application to the court clerk. 28 U.S.C. § 3203(c)(1). A writ permits the Government to levy "[a]ll property in which the judgment debtor has a substantial nonexempt interest," 28 U.S.C. § 3203(a), except "property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986." 18 U.S.C. § 3613(a)(1). Section 6334's exemptions preclude the Government from levying items such as provisions and personal effects; books and tools of a trade or profession; certain annuity and pension payments; worker's

compensation; judgments for support of minors; and service-connected disability payments. The writ procedure requires sending a notice to the debtor containing specific statutory language. 28 U.S.C. § 3202(b). Among other things, the notice must inform the debtor that the Government is taking his property to satisfy a judgment, that some property may be protected by legal exemptions, and that a hearing at which the debtor can seek the return of his property must be requested within 20 days of receiving notice, or the property may be sold and the proceeds applied toward the judgment. *See id.*

Pursuant to 28 U.S.C. § 3202(d), a district court must hold a hearing on a debtor's objection to a writ of execution as long as the debtor seeks to quash the writ on one of three enumerated grounds: determining the validity of any claim of exemption, the Government's compliance with statutory requirements, and the determining the validity of default judgments. Other circuit and district courts have held that a section 3202(d) hearing is not an opportunity for a debtor to challenge the validity of his restitution obligation or his ability to pay it. *See United States v. Smith*, 88 F. App'x 981, at *1 (8th Cir. 2004) ("The district court did not err in denying Smith's request for a hearing. In her objection, she did not dispute that the fine had been imposed and not paid; rather, she sought to challenge the validity of the fine imposed, which she may not do in a FDCPA hearing." (citing 28 U.S.C. §

3202(d))); *United States v. Pugh*, 75 F. App'x 546, 547 (8th Cir. 2003) ("[T]he hearing will not be an opportunity for Pugh to challenge the validity of the underlying conviction or restitution obligation."); *United States v. Mahar*, 42 F.3d 1389, at *1 (6th Cir. 1994) ("Upon review, we conclude that Mahar's argument that he is unable to afford the amount of the garnishment is not a permissible defense to raise under 28 U.S.C. § 3202(d)."); *United States v. Lawrence*, 538 F. Supp. 2d 1188, 1194 (D.S.D. 2008) (defendant is not entitled to a § 3202(d) hearing to consider his "financial situation").

Cooper does not rely upon any of these three section 3202(d) issues in his objection to the Government's writs of execution. Rather, he cites inapplicable provisions of the MVRA, 18 U.S.C. §§ 3664(f)(2) & (m)(1), and the All Writs Act, 28 U.S.C. § 1651(a), in support. Nor does he argue that the funds in the Fidelity account actually belong to his wife. Accordingly, because the objection raises none of the issues that may be litigated in a section 3202(a) hearing, it is due to be overruled.

**IV. Conclusion**

In sum, Cooper schemed to defraud Regions out of more than $5 million, and in order to secure a favorable plea bargain, he agreed not to contest the restitution portion of his criminal judgment in any post-conviction proceeding.

Accordingly, his requests for a payment schedule and that the Government not levy the Fidelity account for Regions's benefit (doc. 112) are hereby **DENIED**.

**DONE** AND **ORDERED** ON JUNE 19, 2018.

/s/ L. Scott Coogler
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704